FILED SEP 2 '26 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:26-cr- 00326-AB |
| v. | INDICTMENT |
| PAPA DIALLO, | 18 U.S.C. § 1343 and 1344 |
| Defendant. | Forfeiture Allegations |
| | UNDER SEAL |

UNDER SEAL

THE GRAND JURY CHARGES:

**A. INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

1. Defendant PAPA DIALLO was the owner of Creative Packaging Slts, Limited Liability Company ("CPS"), a company in Portland, Oregon, with Employer Identification Number (EIN) of 82-1005495.

2. Defendant DIALLO registered CPS with the Oregon Secretary of State on November 20, 2018. The registration identified defendant DIALLO as the owner, registered agent, organizer, and individual with direct knowledge of CPS. CPS was administratively dissolved on January 16, 2020, and reinstated on September 28, 2020, under the business activity

of "moving, packagings [sic], transport, export/imports." The reinstatement amendment identified defendant DIALLO as the owner, manager, and registered agent of CPS.

3. For tax years 2019 and 2020, CPS did not file IRS Form 1120 (Corporation Income Tax Return), IRS Form 1120S (S-Corporation Income Tax Return), IRS Form 941 (Employer's Quarterly Federal Tax Return), IRS Form 940 (Employer's Annual Federal Unemployment Tax Return), IRP Payee Documents, or IRP Payor Documents with the Internal Revenue Service (IRS).

4. On July 12, 2021, CPS filed an IRS Form 1099-MISC with the IRS that reported $62,080 in miscellaneous wages for tax year 2020. This is the only IRS Form 1099-MISC filed by CPS for tax years 2019 or 2020.

5. For tax year 2019, defendant DIALLO reported on his individual federal tax return through his IRS Form 1040 (Schedule C) that CPS's gross profit was $320 and that it lost $34,680.

6. For tax year 2020, defendant DIALLO reported on his individual federal tax return through his IRS Form 1040 (Schedule C) that CPS's gross profit was $2,350 and that it lost $27,723.

**<u>The Paycheck Protection Program</u>**

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. One form of assistance provided by the CARES Act was the authorization of up to $349 billion in United States taxpayer funds in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In

or about April 2020, Congress authorized over $300 billion in United States taxpayer funds in additional PPP funding.

8. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the small business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." In the PPP loan application, the applicant was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses.

9. A business's PPP loan application was received and processed, in the first instance, by a participating financial institution, then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility. If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies. The SBA guaranteed the loans funded under the PPP and paid lender fees to financial institutions for financing the loans.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses, namely, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the

interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds towards payroll expenses. Forgiveness of the PPP Loan entailed the SBA paying the full loan amount and accrued interest to fully satisfy the lending institution.

11. The PPP also allowed certain eligible borrowers that had previously received a PPP loan to apply for a second PPP loan, with the same general loan terms as their first PPP loan. These "second round" loans could be used for the same purposes as were permitted for the first PPP loans, including payroll costs, interest on mortgages, rent, and utilities.

12. PPP loan applications submitted after January 11, 2021, were transmitted via interstate wires and received through servers located in Oregon.

13. Regardless of date, PPP forgiveness applications were transmitted via interstate wires and received through servers located in Oregon.

**The Restaurant Revitalization Fund**

14. The American Rescue Plan Act established the Restaurant Revitalization Fund ("RRF") and appropriated $28.6 billion to the SBA for the purpose of making grants under that program. The SBA was authorized to award RRF grants of up to $5,000,000 per location (not to exceed $10,000,000 total for the applicant and any affiliated businesses) to restaurants, bars, and similar ventures to help offset revenue losses resulting from the COVID-19 pandemic and related mitigation measures. Funds expended for authorized purposes before March 11, 2023, did not need to be repaid under the terms of the grant.

15. RFF applications were received through SBA servers located in Oregon and transmitted via interstate wires to servers in Virginia.

**The Economic Injury Disaster Loan Program**

16. The Economic Injury Disaster Loan Program ("EIDL") was a United States SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

17. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

18. To obtain an EIDL loan, a qualifying business was required to submit an application to the SBA and provide information about the business's operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was the 12-month period from January 31, 2019, to January 31, 2020. EIDL loan applications were submitted directly to the SBA over the Internet, using cloud-based platforms hosted on computer servers in several states. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold. Any funds issued under an EIDL were issued directly by the SBA. EIDL advances of up to $10,000 were also available to small businesses within three days of applying for an EIDL. The amount of any EIDL advance was determined based upon the number of certified employees by the applicant. EIDLs must be repaid, but EIDL advances do not have to be repaid. EIDL loan proceeds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

19. In order to obtain EIDL, PPP, or RRF funds, an applicant was required to provide information about the subject business's operations, such as the date of opening, number of employees, and past revenues. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

20. Applications for EIDLs were submitted to the SBA over the Internet, using cloud-based platforms hosted on computer servers in several states. Before July 11, 2020, applications bearing numbers that began with the digits 36 were routed to servers in the State of Washington. Beginning on July 11, 2020, all EIDL applications, regardless of number, were routed to servers in the State of Iowa.

**Relevant Financial Institutions and Account**

21. U.S. Bank is a federally insured lender that participated in the PPP.

22. Customers Bank is a federally insured lender that participated in the PPP.

**B. THE SCHEME TO DEFRAUD**

23. Beginning in or about March 2020, and continuing through at least December 2021, within the District of Oregon, and elsewhere, defendant DIALLO knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a material scheme to defraud the SBA, U.S. Bank, and Customers Bank as to material matters, and to obtain money and property owned by and in the custody and control of the SBA, U.S. Bank, and Customers Bank by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

24. Specifically, defendant DIALLO applied for EIDLs, PPP loans, and a RRF grant for CPS using false borrower information with the intent to steal and to convert the proceeds of

those loans to his personal use and without any intent to use the proceeds thereof for any authorized purpose.

25. The fraudulent scheme operated and was carried out, in substance, as follows:

**EIDL Application 3323198761**

26. On or about August 16, 2021, defendant DIALLO submitted, and caused to be submitted, to the SBA application 3323198761 in the name of CPS seeking an EIDL loan in the amount of $314,000. The application stated CPS was a catering company in the "eating & drinking places" industry.

27. On application 3323198761, defendant DIALLO made the following materially false statements and representations in furtherance of securing the loan proceeds:

a. CPS' gross revenues in 2019 were $210,680;

b. CPS' cost of goods sold in 2019 was $53,680; and

c. The information in the application submitted in support of the application was true and correct.

28. The SBA denied EIDL application 3323198761.

**EIDL Application 3323830681**

29. On or about September 23, 2021, defendant DIALLO submitted, and caused to be submitted, to the SBA application 3323830681 in the name of CPS seeking an EIDL loan in the amount of $148,100. The application stated CPS was in the freight industry.

30. On application 3323830681, defendant DIALLO made the following materially false statements and representations in furtherance of securing the loan proceeds:

a. CPS' gross revenues in 2019 were $142,360;

b. CPS' cost of goods sold in 2019 was $68,320;

c. CPS' gross revenues in 2020 were $63,364;

d. CPS' cost of goods sold in 2020 was $29,000; and

e. The information in the application and submitted with the application was true and correct.

31. The SBA denied EIDL application 3323830681.

**PPP Application 19286940 (U.S. Bank)**

32. On or about June 2, 2020, defendant DIALLO submitted, and caused to be submitted, to U.S. Bank application 19286940 in the name of CPS seeking a PPP loan in the amount of $13,180. The application stated CPS was a "general warehousing and storage" company. On application 19286940, defendant DIALLO materially misrepresented that CPS had an average monthly payroll of $5,272, and falsely certified the information in the application and provided in all supporting documents was true and accurate.

33. In support of application 19286940, defendant DIALLO submitted what purported to be the 2019 Schedule C for Creative Packaging SLTD LLC, EIN 82-1005495. The Schedule C reported:

a. CPS' gross receipts or sales in 2019 were $98,320;

b. CPS' total expenses in 2019 were $35,050; and

c. CPS' net profit or loss in 2019 was $63,270.

34. This document was never filed with the IRS.

35. Based in part on the misrepresentations provided in application 19286940 and the supporting Schedule C, U.S. Bank approved and funded PPP loan number 6750477808 in the amount of $13,180. On or about June 3, 2020, this amount was disbursed to defendant DIALLO'S U.S. Bank account ending in #7878.

36. Defendant DIALLO depleted the entirety of the loan proceeds by June 8, 2020, through counter withdrawals, debit card purchases at retail stores, and a check written to himself.

37. On or about June 25, 2020, the SBA paid U.S. Bank $659 in lender fees for funding loan number 6750477808 to defendant DIALLO.

38. On or about December 16, 2021, defendant DIALLO submitted a forgiveness application to the SBA for the entire $13,180 received as PPP loan number 6750477808. On that application, defendant DIALLO materially misrepresented that he spent $10,600 on payroll during the covered period between June 3, 2020, and July 29, 2020. Based on the misrepresentations in the forgiveness application, the SBA forgave the PPP loan and on December 22, 2021, paid U.S. Bank $13,180 in principal and $207.58 in interest.

**PPP Application (Second Draw) (U.S. Bank)**

39. On or about January 29, 2021, defendant DIALLO submitted, and caused to be submitted, to U.S. Bank, an application in the name of CPS for a second draw PPP loan in the amount of $30,340. The application stated CPS was a "use household and office goods moving" company. On February 24, 2021, U.S. Bank reviewed information submitted and supporting documentation provided and completed the SBA Form 2484-SD, Lender's Application – Second Draw based upon information and supporting documentation submitted by defendant DIALLO.

40. Information submitted by defendant DIALLO included the following materially false statements and representations in furtherance of securing the loan proceeds:

a. CPS had an average monthly payroll of $12,136;

b. CPS's gross receipts for quarter 2 of 2020 were $19,005;

c. CPS's gross receipts for quarter 2 of 2019 were $43,350; and

d. The information in the application and provided in all supporting documents was true and accurate.

41. In support of the second-draw PPP application, defendant DIALLO submitted CPS' profit and loss statement for 2019 which represented that CPS's net profit in 2019 was $53,350.

42. In support of the second-draw PPP application, defendant DIALLO submitted CPS' profit and loss statement for 2020 which represented that CPS's net profit in 2020 was $940.

43. In support of the second-draw PPP application, DIALLO submitted four IRS Form 941s (Employers Quarterly Federal Tax Return) for CPS which he purported to have filed with the IRS. On those forms defendant DIALLO made the following material misrepresentations:

| **2020 Quarter** | **Date Filed with IRS** | **Wages, Tips, and Other Compensation** |
|---|---|---|
| January-March | 4/30/2020 | $34,576.50 |
| April-June | 8/17/2020 | $27,250 |
| July-September | 10/22/2020 | $41,200 |
| October-December | | $42,610 |

44. These forms were never filed with the IRS and were created to support the material misrepresentations on the second-draw PPP application.

45. In support of the second-draw PPP application, defendant DIALLO submitted an additional four IRS Form 941s (Employers Quarterly Federal Tax Return) for CPS which he purported to have filed with the IRS. On those forms defendant DIALLO made the following material misrepresentations:

/ / /

/ / /

| 2020 Quarter | Date Filed with IRS | Wages, Tips, and Other Compensation |
|---|---|---|
| January-March | 4/30/2020 | $31,505.50 |
| April-June | 8/17/2020 | $19,005.50 |
| July-September | 10/22/2020 | $51,575.45 |
| October-December | 1/4/2021 | $43,550.75 |

46. These forms were never filed with the IRS and were created to support the material misrepresentations on the second-draw PPP application.

47. On or about February 26, 2021, U.S. Bank declined the second-draw PPP application.

**PPP Application (Second Draw) 25891137 (Customers Bank)**

48. On or about February 23, 2021, defendant DIALLO submitted, and caused to be submitted, to Customers Bank, application number 25891137 in the name of CPS seeking a second draw PPP loan in the amount of $43,934. The application stated CPS was a "use household and office goods moving" company.

49. On application 25891137, defendant DIALLO materially misrepresented that CPS had an average monthly payroll of $17,574 in furtherance of securing the loan proceeds, and falsely certified the information in the application and provided in all supporting documents was true and accurate.

50. In support of application 25891137, defendant DIALLO submitted what purported to be the 2019 Schedule C for Creative Packaging SLTD LLC, EIN 82-1005495. The Schedule C reported:

a. CPS' gross receipts or sales in 2019 were $98,320;

b. CPS' total expenses in 2019 were $35,050;

c. CPS' net profit or loss in 2019 was $63,270.

51. This is the same Schedule C submitted in support of second draw PPP application 19286940.

52. This document was never filed with the IRS.

53. Based in part on the misrepresentations provided in application 25891137 and the supporting Schedule C, Customers Bank approved and funded second draw PPP loan number 2697808504 in the amount of $43,934. On or about February 26, 2021, this amount was disbursed to defendant DIALLO'S Wells Fargo account ending in #0101.

54. Between February 24, 2021, and March 25, 2021, defendant DIALLO transferred $28,205 to a savings account in his name and then transferred the funds to a brokerage account in his name where he used them for day trading transactions.

55. On or about March 16, 2021, the SBA paid Customers Bank $2,500 in lender fees for funding loan number 2697808504 to defendant DIALLO.

**COUNTS 1-2**
**(Wire Fraud)**
**(18 U.S.C. § 1343)**

56. The allegations in paragraphs 1 through 55 of this Indictment are incorporated as though realleged herein.

57. On or about the dates set forth below, in the District of Oregon, and elsewhere, for purposes of executing the above-described material scheme to defraud defendant DIALLO transmitted and caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

///

///

///

| Count | Date | Interstate Wire Transmission |
|---|---|---|
| 1 | 8/16/2021 | Submission of EIDL application number 3323198761 through servers located in the District of Oregon, and elsewhere. |
| 2 | 9/23/2021 | Submission of EIDL application number 3323830681 through servers located in the District of Oregon, and elsewhere. |

All in violation of 18 U.S.C. § 1343.

**COUNTS 3-4**
**(Bank Fraud)**
**(18 U.S.C. § 1344)**

58. The allegations in paragraphs 1 through 57 of this Indictment are incorporated as though realleged herein.

59. On or about the dates set forth below, in the District of Oregon, and elsewhere, defendant DIALLO did execute or attempt to execute a scheme or artifice to obtain funds under the custody or control of federally insured financial institutions, by means of false or fraudulent pretenses, representations, or promises by submitting the following applications and supporting documents:

| Count | Date | Description |
|---|---|---|
| 3 | 6/2/2020 | Submission of PPP loan application number 19286940 to U.S. Bank through servers located in the District of Oregon, and elsewhere. |
| 4 | 2/23/2021 | Submission of PPP loan application number 25891137 to Customers Bank through servers located in the District of Oregon, and elsewhere. |

All in violation of 18 U.S.C. §1344(2).

**FIRST FORFEITURE ALLEGATION**

60. Upon conviction of the wire fraud offense alleged in Counts 1-2 of this Indictment hereof, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

61. If the above-described forfeitable property, as a result of any act or omission of defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

**SECOND FORFEITURE ALLEGATION**

62. Upon conviction of the bank fraud offenses alleged in Counts 3-4 of this Indictment, defendant shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2) any and all property constituting or derived from proceeds obtained directly or indirectly as the result of such violations, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from those offenses.

63. If the above-described forfeitable property, as a result of any act or omission of defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

The United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: September 1, 2026

A TRUE BILL.

[redacted]

OFFICIATING FOREPERSON

Presented by:

SCOTT E. BRADFORD
United States Attorney

GEOFFREY A. BARROW
Assistant United States Attorney